Good morning, may it please the court. Saman Nasseri on behalf of the petitioner Hugo Alexander Hernandez Ceren. I'd like to reserve two minutes for rebuttal, please. Your honors, the matters before this court that we would like to address are twofold. First is the denial of the continuance by petitioner's attorney due to illness, and the second, the adverse credibility finding by the immigration judge. The first part of the lack of the continuance due to the illness, counsel for the petitioner at that time submitted to the court documents after the fact of her illness. She notified the court prior to it. Can I ask a question? Yes. Just about how all the parts here fit together. There was also a particularly serious crime determination, which would bar the withholding and the asylum. Is that right? That was the determination of the court, and I would state first and foremost that I don't believe that the particularly serious crime. Well, I know, but what I want you to say is that the other issues would wash, not the continuance issue perhaps, but the other one. Any merits issue would wash out if the particular serious crime was correct. Is that right? Any issue would wash out if the particular serious crime determination was correct. While this case has been pending, the board has made an alternate finding to the specific crime as it relates to particularly serious crime under the matter of Sanchez-Lopez, showing that this crime doesn't fall under the crime of stalking, wouldn't be an aggravated felony, and wouldn't be a particularly serious crime because it's not a divisible statute, doesn't need the modified categorical approach, and therefore, it doesn't meet the meaning of a particularly serious crime because it's not stalking. So I would defer to the Sanchez-Lopez decision on this case should the court determine to remand or should the court determine any other issues that Sanchez-Lopez would essentially wipe out the particularly serious crime element or the case could be revisited at the lower court or even here as far as the evidence presented to see if it is a particularly serious crime. Can I ask about the continuance? As I understand it, the continuance initially was granted so that they could submit additional documents and I guess also provide a closing argument. Is that correct? That is correct. The first continuance and there was a second continuance that was denied. That is correct. But in the first continuance, what was left on the table? Was it just, is it true that it was just documents and closing argument? It was documents and closing argument. However, it is uncertain and your honor, I did not do that portion of the case, obviously, but that what was yet to do with the documents, which are very important documents to this case as far as credibility. But the properly translated and authenticated documents have never been submitted to the immigration court, have they? The documents themselves have been submitted to the immigration court. Counsel, listen to my question. Properly was concerned about. He granted a continuance to petitioner's counsel to go get an objective third-party translator to get those documents translated and authenticated. That never happened, did it? That is correct. Those documents were not submitted. So the only documents that we have in the record were those that were admitted solely for identification and which were submitted because the lawyer, because there was no continuance. The reason why they weren't. At least the lawyer represented at the time that she asked for the continuance, that she still intended to introduce those authenticated documents if she got the continuance. That is correct, your honor. And she did get that continuance. But then she never said. No, I mean the second one. The second continuance. She didn't. Well, no, I thought it was actually related to the first. I thought the first continuance was granted so that she could submit the document. The second continuance was due to the illness of her and then her. But she was supposed to have those documents submitted to the court before the second hearing, and she didn't do that either. The timing between the two hearings was six days. But this is not. These documents are not that long. It wouldn't I don't disagree with that position that the documents themselves are not that long. However, there was no determination, at least from what I saw in the far as the transcripts and the decision by the immigration judge, the documents were to be presented to the court at the hearing and then to make a determination at the hearing whether or not they're getting presented. But even if she was sick, why couldn't she? Was the argument or did she present something in the court to say because of my illness, whatever it was, I couldn't get the documents authenticated. I need more time to do that. Or was it I got sick yesterday. I can't come to the hearing. She got sick three days prior to that. She went to the doctor three days prior to the hearing. Her illness could have stemmed before. And I do not know that. But from the transcript, I understood she was going to have them translated by Catholic Immigration Services or whatever the third party entity was. And there's nothing in the record to suggest that she ever did that. Right. There is not. There is not. How can we find prejudice here if the lawyer didn't get the proper documents back to the court? I think we can find prejudice because of what the documents are and the weight that they carry. But was there any, in the original statement, was there any requirement that she submitted before the hearing? Not that I saw. There was no requirement that they be submitted before the hearing, just that they be submitted at the hearing and then be determined at the hearing whether or not they'd be admitted into the record and what they were to convey. And she did say in her motion that there's additional evidence she'd be submitted, which corroborates these documents include A, B, and C, which suggests that she was going to submit those documents, which suggests that she either did or was going to get them translated. But she didn't attach those to her declaration, did she? She did not attach those documents to her declaration, Your Honor. She attached the doctor's note and she attached the motion for a continuance. And one of the disclaimers that any immigration judge gives at the end of any hearing is, absent an illness or death in the family, these hearings are going to go forward. The immigration judge, the attorney at the time for the petitioner, did her due diligence, contacted the court, let them know she was not going to be there due to illness. The immigration judge's position at that time was, well, I can move forward with a decision because she'll go ahead and read it later. Well, but part of that rationale was the documents aren't going to change anything. So I would like to hear your position on why these documents were so important. Because what we have in the record is, you know, I gave you an extra week to go get these certified and come before me, but I don't think that they have anything to do with the case. And then she gets sick, doesn't submit documents, and the judge then just goes forward. What is it in those documents that was going to change this opinion? Your Honor, I think that's extremely important to keep in mind. We're talking about his membership card into the arena party, which has to do with his political opinion, his social opinion, has to do with the police report. But I don't think that she was disputing that, was she? That part of the credibility finding was the membership card and when he joined the arena party itself, which is the double-edged sword in and of itself. I thought there were a number of grounds that the immigration judge cited in support of the adverse credibility determination, including the inconsistent statements between the petitioner and his wife with regard to the prior act of persecution, the inconsistent statements with regard to whether or not they witnessed a murder in Mexico. I mean, there were a number of grounds cited that the documents don't address at all. Well, the police report that would have been translated from El Salvador would have confirmed the issue of the individuals coming into the home. The injuries to his wife and the injuries to the medical records. But the question was, did they knock on the gate or did they knock on the door? Did he open the gate to admit the officers? There's nothing in the police reports that address that. No, however, I would bring those issues up as trivial and I would carry those for the Renvie Holder decision. But this is a post-real ID act case, is it not? It is a post-real ID act, but I would cite to Renvie Holder where issues that are not pertinent to the actual substance of the case. You know, somebody pushed the door, kicked the door. He testified that there were multiple people. Someone pushed the door, someone kicked the door. The IJA brings up the issue with the address. He states on the record what the address is. The IJA does not even address any of the credible factors. He used a different address on his asylum application, did he not? He puts a different address in the asylum application, but without even being asked about any of those addresses, the first address he gives in his testimony is the last address where this attack happened. How about the details of the stalking, the fact that he sent 100 text messages threatening to kill his wife? I have a separate argument as part for that, Your Honor, that I would argue that even police reports coming into a case like this without any possibility of examination of the victim in this case or the officers, there is nothing else corroborating that outside of a police report. But we're talking about bases to support adverse credibility findings, counsel. I mean, the problem I'm having with your argument is under the Post-Real ID Act, we have to look at the totality of the circumstances. And the IJA gave about a half a dozen different inconsistencies and outright whys that your client didn't have an adequate explanation for. Why doesn't that provide substantial evidence to support an adverse credibility finding? I don't think any of those inconsistencies, even altogether, combined for the totality of the circumstances to find an adverse credibility finding, I think the IJA was ready to make an adverse credibility finding based on what happened before. We would have to determine that this record compels the opposite result, wouldn't we? Would. And of course, one problem there is we don't have the documents that you're talking about. And I understand that that's because of the continuance. We're sort of back to the continuance problem. We do have the documents. They're marked for identification, but they're not actually translated within the file itself. So they're not evidence. They're not evidence. However, I would argue that as far as the adverse credibility finding goes, we can – they talk about when he joined the Arena Party. Well, if he said he – if he gave the same testimony he gave in the prior hearing, he's not credible because that was incorrect because he was off by a month. So – but to back up a minute, you're not contesting the resettlement in Mexico? And we're not here to contest the resettlement in Mexico, but that doesn't go towards the withholding issue. Right. Okay. It doesn't go – so with regard to the asylum, you – I mean, you have a whole other problem, which is what's the basis for the nexus on the asylum. Correct. All right. So then we're back to the withholding, largely. And everything having to do with what happened in Mexico is kind of off the table, it seems to me. I mean, both directions. I mean, it seems to me it shouldn't be a subject of an adverse credibility finding either. It's just off the table. I don't think that – I agree it's not a subject of the adverse credibility finding. I think that goes towards the withholding issue, whether or not that he feels it's a – Right. So then there's the withholding – so the credibility issue has to do with what happened in El Salvador, not what happened in Mexico. The withholding issue has to happen with El Salvador, but the IJ addresses the credibility issue in Mexico as well. But he – I mean, his argument for asylum was because he couldn't go back to Mexico. And that is correct. Right. But what I'm saying is that just seems off the table at this point, because if he was resettled in Mexico and he has no basis for asylum in Mexico, it's only withholding that we're talking about. No. My argument would be that his basis for asylum in Mexico is based on what happened to the police, regardless of the resettlement issue, and his basis for this withholding from El Salvador. What happened to the police? He saw the police – not the police, but he saw the individuals – Yes, but he needs to have a protected ground in Mexico. What is that? His belief in Mexico is that people came and threatened him, saying – But what's the protected ground? I believe the protected ground is someone who witnessed a crime. That would be the protected ground of someone in Mexico. Okay. Thank you. All right. Thank you very much. May it please the Court, Sarah Bird on behalf of the government. Can we start with the particular serious crime? Because I was – I don't know what case he's talking about, but is there still an issue about the particular serious crime? Yes, Your Honor. We believe that the particular serious crime is an alternative basis for the denial of withholding of removal. So certainly the immigration judge provided a numerous alternative basis for denial, including adverse credibility, particularly serious crime, and then went on and denied on the merits. So if we reached – the adverse credibility determination said that was okay, then we  That's right. And vice versa. And vice versa. That's correct. Now, as Petitioner pointed out in the 28J letter that was recently filed, the scope of review here is a little confusing because the Board adopted and affirmed the immigration judge's decision and then highlighted agreement with some of the inconsistencies for the adverse credibility and then added to why the Board was finding no abuse of discretion in denying the continuance, but did not specifically mention the particularly serious crime. So under this Court's decision in Abebe, when the Board adopts and affirms and cites matter bravado, the entire immigration judge decision comes in unless the Board explicitly limits the scope. And here the Board did explicitly limit the scope by noting that there had been no challenge to the resettlement, firm resettlement, so asylum is off the table, and there had been no challenge to the merits of the Convention against Torture claim. So those two issues weren't exhausted and are off the table, but the Board did not specifically mention particularly serious crime, so it becomes a little unclear under this Court's case law as to how that plays out. It's the government's position that because the Board adopted and affirmed and didn't say that it wasn't reaching particularly serious crime, that brings in the particularly serious crime. So this Court could affirm on that or alternatively could affirm the adverse credibility and either of those would be sufficient to uphold. As to the particularly serious crime, does the government concede that there was at least an error or a miss, maybe error is not the right word, but a misstatement as to what crime was actually being considered? Because as I understood it, they were looking at the underlying, they said that she was sentenced to three years for stalking when it was really, or served time for three years for stalking when it was really for violation of the probation as far as what was served, right? Right. So yes, the immigration judge said that the sentence was three years. And the original sentence for just the conviction was 365 days in jail plus three years probation. And then he violated his probation by continuing to contact the victim. We don't really know why he violated his probation. And that's not in the record. It is in the record, yes. Where is that? I mean, I know he did that, but we don't know that was the basis on which the probation was revoked. I have, see administrative record 639. He violated his probation by mailing her a card. I think that the point is that the overall sentence was three years. I agree with you. The immigration judge could have been more precise and specified originally it was 365 days plus three years probation. Then he ended up having to serve the whole three years. But I think under the matter of Frentescu- Sentence was three years with two years suspended, one year in custody and three years probation. Wasn't that the original? The original. By the Superior Court? I believe so. So if the defendant is sentenced to three years with one year to serve and two years suspended, but then violates probation and then he serves the remainder of his three-year sentence, that seems to me to be a three-year sentence. It is. And that's what he said in his appeal. Even if he didn't violate, it was still a three-year sentence. It's just two was suspended. That's also true. And the sentence is one of the factors, but it's not the main controlling factor. I also want to address with regard to particular serious crime, what petitioner raises, this Sanchez-Lopez board decision. What about that? That decision was as to a totally different issue. That was whether this California stalking offense under the categorical approach is a crime of stalking, which is a ground of removability in the INA. So in that decision, the board looks at the elements of the California case- An aggravated felony? Or what is it? I'm sorry? It's an aggravated felony? Or- No, it's a totally separate- Really? Ground. It's crimes of stalking, child abuse, or something else. And it's just, it's a separate INA- But it's not whether it's a particular- But it was enacted to address domestic violence cases, basically, was it not? That particular removability- That's why Congress amended the INA. Yes, I believe so. But that addressed, so that's applying the categorical approach and addressing a separate issue. This particularly serious crime determination is a case-by-case analysis that specifically is supposed to look at the facts and circumstances underlying- But kind of in a rudderless way. I mean, it's, I wrote an opinion saying that it's not unconstitutionally vague, and I'm starting to wonder, because it just has no bounds. I mean, you're supposed to be, yes, looking at the particular facts, but the particular facts with regard to what baseline. There really isn't one. Well, there are some factors. You know, the Board has said that if it's in Frantescu, the Board said a suspended sentence after a relatively short time in prison would weigh against a particularly serious crime. No, but I mean as to the merits, as to the fact, what the crime or the underlying facts of the crime even. Well, whether it's violence against a person versus- Could you address the continuance question, please? Yes, Your Honor. So the continuance, the hearing closed, the merits hearing. At the beginning of the merits hearing, it came out that those documents had not been properly translated, and the immigration judge said, well, we'll consider about a continuance after we hear testimony. So they heard testimony, and then the immigration judge granted one-week continuance to get the translations in. At the next hearing, which was supposed to be, I believe, just for the translated documents and a decision- Can I ask, were the documents discussed at the hearing such that the substance was in there even though they just weren't certified, or were they just not discussed at all? I think they were discussed in that the immigration judge had the table of contents listing what the documents purported to be and went through them one by one and even looked at them to see the translations, and that's why part of the reason the I.J. found that they were not properly translated. So the I.J. was very aware of the scope of those documents. But he didn't- It's like a proffer. They weren't discussed. But right, the substance, it was more like a proffer of what they would be rather than- Part of the problem was that the petitioner didn't recognize some of the Spanish words and couldn't translate them, right? That's right. So it's not a complete translation even from the- That's right, and the translated documents are still not a part of the record, and that's significant because in order to show that the continuance, denial of continuance was prejudicial, counsel could have submitted those- But under our case law, does it have to show that it's prejudicial? My understanding is that a denial of counsel on a merits hearing, and this was a merits hearing, doesn't have to show that it's prejudicial. There's a later opinion that says, well, whether it's a plenary- So I think you're talking about the denial of counsel, whereas I'm talking about the denial of a continuance. Well, but the result of the denial of continuance was that he had a denial of counsel. He didn't have counsel. He didn't have counsel present during the issuance of the decision. But it wasn't only the issuance of the decision, or at least the lawyer- But the lawyer, it was originally a continuation of the merits hearing. At the end of the merits hearing, the immigration judge specified that the next hearing would be for the issuance of a decision. And for the receipt of these documents, if in fact- Prior to that. Did he say prior? No, it's implicit, I think. Well, he didn't say prior. He didn't say prior, but I think since he clearly said that the next hearing was for the issuance of a decision, if she wanted him to consider the documents prior to issuing an oral decision, she would have had to submit them before that next hearing. So was there any understanding that they were going to come with the documents and then have somebody talk about the documents in substance? Or was it really just a continuance to say, hey, here's the documents. We're going to check the box on submitting certified copies. The immigration judge says at the end of that hearing that it's late in the day, we'll continue it for the issuance of the decision. In the meantime, since we're continuing it, you can submit those translated documents. So it was not anticipated that there was going to be additional witnesses? I mean- No, he had already presented his two witnesses. And the board did say that in order to show- for them to reverse the denial of a continuance, he needed to show prejudice. I know he said it, but that doesn't mean it's right. And- Well, I do think it's significant that he still didn't submit those documents, even on appeal to the board, to show their significance, to show why they would have- Well, but the board doesn't take evidence directly. The best he could have gotten out of that would have been a remand, right? Right. But that's what he wanted, was a remand. Yes. Counsel, can you help me? Our decision in Gomez-Velasco v. Sessions addresses whether or not a showing of prejudice is required if we determine that counsel was not denied at a discreet- or was denied at a discreet stage of the proceeding. Would you characterize this second hearing as a discreet stage for which a showing of prejudice is required? That's a horrible question, but- I think- There's some tension in our- I understand your question. There's some tension in our case law as to whether a denial of counsel, even though the government doesn't have to provide counsel, is structural error, which doesn't require a showing of prejudice. Right. And I think here, the immigration judge specifically addressed that by saying that this- at this hearing, it was just an issuance of a decision, because it's an oral decision instead of a written decision. It's substantively the same as just mailing the decision, and counsel was going to get a copy of the decision, and the immigration judge was going to reserve appeal. So, in this particular context, at this last hearing that was just for issuance of a decision, there was no active role for counsel to play. And at that point, the immigration judge didn't even have a written motion for continuance yet. All the immigration judge had was a phone call saying counsel was sick, and evaluating the need for counsel's presence, the immigration judge found that counsel would just be sitting there and listening to the decision, the same as petitioner would. So- And I think the judge did say, I'm basically going to mail out my decision now and then counsel can- Counsel will have it in writing and can then appeal it, which she did. But he also said, I believe at that juncture, that these documents wouldn't make a difference. I mean, he recognized that the documents were- He didn't say the documents can't come in because they weren't submitted earlier. He said, I understood him to say, there's no reason to grant a continuance for the documents because the documents won't matter. So, he clearly wasn't relying on a procedural reason why the documents couldn't come in at that juncture. And he recognized that she was expecting to submit the documents. He recognized that she had been given a continuance. He had left the administrative record open. And you're right, one of the factors for good cause was that he looked at the reasons he was thinking of denying the case. And in light of- But that seems very peculiar to say, I've already decided that he's not credible and therefore I don't want to look at more information that may change my mind and convince me that he is credible. Well, I think as to the adverse credibility, you're right. They are somewhat connected. But as to the other- But that's what he said. Well, yes, but he also said- So, a couple of things on that. He also was denying asylum based on firm resettlement, was denying withholding based on particularly serious crime, and was denying CAT on the merits. So, the immigration judge- CAT we know about. Asylum. Resettlement we know about. But with regard that the particular serious crime and the credibility issues are kind of- Well, the documents- They're redundant. So, we've been proceeding here on the theory that we could decide the credibility and not decide the particular serious crime. So- I'm just pointing out that the credibility one is the only one that the documents could even touch on. But you're right, they do. And the immigration judge also weighed the proffer, the type of evidence, and said, I've got these significant contradictions between his testimony and the testimony- Well, they weren't so significant. They were pretty insignificant, actually. The historical ones, anyway. And the immigration judge thought they were significant, particularly as to whether- They may have been adequate, but they sure weren't strong. So, therefore, to say, I've closed my mind, I don't care what these documents say, they're not going to change my mind. The only eyewitness to the incident, both in Mexico and in El Salvador, was the wife. And he testified that he went out to the gate and then got dragged in in handcuffs. And she testified, no, there was no gate. He just opened the door. So, it's very different. And the immigration judge said, in light of the fact- She didn't say they came to the door. She didn't say there was no gate. She said there was no impediment to them- Right, but she didn't say there was no gate. All right. Your time is up. Thank you very much. I'm sorry, one minute, please. Yes. I do want to address a couple of factors. First and foremost, when it comes to the continuance, it's important to note that the BIA's reliance on cases for denying the continuance, all the cases that the board relied on have to do with collateral relief or cases in which something else is being filed within the court or at the BIA level in order to deny the continuance. Secondly, the IJ does say in her decision that that merits hearing was set to determine whether or not those documents were going to be relevant and were going to be part of the record and whether or not they would be addressed at that hearing. She says that at part of her decision when she discusses the request for the continuance. I think you'd have a much stronger argument if the documents had actually been translated and supplied to the immigration court, but it never happened and we don't have them in the record. And I do agree with that. I think this case would be much different if those documents were presented. I don't think we would be here arguing that issue. However, the problem is- I mean, they weren't presented because there was no continuance. They were not presented because there was no continuance. Well, wait a minute, there was a continuance. There was a continuance, a week in order to get them properly translated and it didn't happen within that week and as far as we know, it never happened at all. With no filing deadline set by the IJ. With her understanding, even in her own decision, saying the documents can come to court. You don't think that the second hearing date was the deadline? The second hearing date was- I do believe that the second hearing date was the deadline, but for the immigration- And she didn't meet it. For the attorney at that time to say, I am ill, I am not going to be in court, I have additional- But let's take a step back. I mean, the first hearing could have easily been the deadline. I mean, so the attorney shows up to the hearing with documents to submit that she can't submit. She gets a continuance in order to do that and then still doesn't comply. Seems to me that if I were in that situation, I'd go immediately after the hearing, be a little bit grateful that I had some extra time and I'd go get them translated immediately. Now, she happened to get sick at some point in there, but I just- It feels like this is being dumped on the IJ when there's a lot that could have been done and should have been done to prevent this from happening. I'll be the first to say that I think a lot could have been done at the lower level on all sides to prevent a lot of things from happening, including from the IJ and from the trial attorney, even the government attorneys themselves. However, where we are now, and I think I am in agreement with a respondent here that Ahmed V. Holder would be the case that would justify the continuance here, and I would look at those five factors in that case. The nature of the evidence excluded, in this case it's police reports, hospital records, and medical records. The reasonable- How could you say that assuming that they were part of the evidence in the record? They never had the opportunity. You're asking the IJ to speculate on the basis of evidence that he or she never received. That's the basis of the continuance. You have an attorney who's ill who could have been to court at that marriage- But she didn't say in the declaration, I'm sorry, I didn't have time to get the documents translated, or if she did, here they are. I'm sorry I couldn't make it. Here's my doctor's note. We don't know what happened to those documents other than they never made it to the immigration judge. And I think the flip side of that is what would have been the prejudice to the court if the hearing was continued out beyond the doctor's note date for an attorney to be present at this hearing and make a record for the purposes of the case? Okay, your time is up. Thank you very much. And I want to say to both of you that this was an unusually good argument in an immigration case on both sides. Thank you very much. All right. The next case of Serrin v. Barr is submitted. We will go to Lux EAP v. Brunner.
judges: Berzon, Tallman, Nelson